## JONES v. WESTERN UNION TELEGRAPH CO.

1. TELEGRAPH COMPANY.—It is not the intention or effect of the former decision in this case, 70 S. C., 540, to prevent plaintiff from showing, so far as he was concerned, that defendant had notice of the purpose of the message from its terms in connection with the information conveyed to its agent, but only to eliminate all allegations tending to connect plaintiff's wife and baby with the message.

2. HARMLESS ERROR.—EVIDENCE as to the relative merits of two telephone systems was irrelevant to the issues here, but its admission harmless.

3. TELEGRAPH COMPANY—WANTONNESS.—There is no evidence here tending to show that defendant wantonly disregarded its duty to plaintiff in failing to deliver a message at a point reached by telephone from one of defendant's offices, the message having been promptly transmitted to defendant's office, but not delivered over telephone, because of defect in the line.

4. IBID.—PUNITIVE DAMAGES—WANTONNESS.—Failure to deliver the message here was not the proximate cause of plaintiff remaining in a livery stable for four hours, nor of his exposure to the cold at night,

and his recovery should have been only for cost of message and of conveyance, as the natural and proximate result of failure to deliver.

Before KLUGH, J., Union, September Term, 1905. Reversed.

Action by Wm. W. Jones against Western Union Telegraph Co. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Evans & Finley* and *J. A. Sawyer,* for appellant. *Mr. Evans* cites: *No evidence of wilfulness here:* 72 S. C., 257; 73 S. C., 520; 74 S. C., 64; 65 S. C., 93.

*Messrs. DePass & DePass* and *Stanyarne Wilson,* contra, cite: *Evidence admissible under allegation of punitive damages:* 54 S. C., 498; 64 S. C., 514; 65 S. C., 97, 122, 516; 67 S. C., 358. *Failure to attempt to send message by the other telephone line was careless indifference to plaintiff's rights: Miller* v. *Ry.,* 72 S. C.; 33 S. C., 577.

September 18, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, living at Whitmire, in Newberry County, S. C., on the morning of February 17, 1904, received a telegraphic message from his father, living at Lockhart Mills, in Union County, announcing the death of plaintiff's brother-in-law, burial next day, with request to come at once. About 12.30 o'clock that day plaintiff, in reply to said message, filed with defendant at Whitmire, to be transmitted to his father at Lockhart Mills, a message in these words: "Meet me at Union this P. M." Plaintiff, within thirty or forty-five minutes thereafter, left Whitmire, traveling in a hired conveyance to Union, a distance of eighteen miles, expecting that his father would meet him at Union with his own conveyance to carry him to Lockhart Mills, a distance of fourteen miles. Plaintiff arrived at Union at 4 o'clock P. M. and remained there until 8 o'clock

14—75

P. M., expecting his father. He then called up his father at Lockhart Mills over the phone, ascertained that the message had not been delivered, arranged with his father to meet him half way, procured a conveyance at Union at a cost of $3.50, proceeded towards Lockhart Mills, was met by his father with conveyance about half-way, and arrived at Lockhart Mills at 12 o'clock that night. · There had been a sleet on the night of the 16th of February, the weather was very cold all next day and grew colder as the evening advanced. The plaintiff brought this action for damages for alleged negligent and wilful failure to deliver the message to his father, alleging as elements of damages that he was thereby compelled to wait at a disagreeable livery and horse stable in the town of Union about four hours on a bitter cold evening, that he was compelled to hire a vehicle and travel over rough road in the cold bitter night to Lockhart Mills, and that he suffered great mental anguish because of defendant's conduct. The jury rendered a verdict for plaintiff in the sum of $250.

The defendant's first exception alleges error in allowing the plaintiff, over objection, to testify that when he delivered the message to the agent at Whitmire, he told the agent (substantially) that his wife's brother was dead, that the burial was next day, that he had to go that night, could not make it by train, and wanted that message sent to his father to meet him at Union with conveyance. The appellant does not dispute the general rule that it is competent to show that a telegraph company had notice of the importance and purposes of a message, either from the face of the mesage or from information had or given at the filing of the same, but the point now made is that the testimony was not competent in this instance because of the decision on the former appeal in this case, 70 S. C., 540, 50 S. E., 198, holding that it was proper to strike out of the complaint an allegation, "that said message was written by said agent for plaintiff, who told the said agent that he wanted the message to tell his father to meet himself and wife that evening with turnout at Union," and that with this

allegation stricken out, there was no allegation in the complaint to which the testimony was relevant. An examination of the opinion, in 70 S. C., 540, will show that the purpose of the defendant and the Court was to strike from the complaint all allegations therein tending to connect plaintiff's wife and baby with the message. To have done otherwise would have permitted plaintiff to contradict the terms of the message which he alleged that he delivered to defendant. It is not the intention or effect of that decision to prevent the plaintiff from showing, so far as she was concerned, that defendant had notice of the purposes of the message from its terms in connection with the information conveyed to defendant's agent. The ruling of the Circuit Court was, therefore, correct.

The second exception being withdrawn, we notice the third exception, which relates to the relevancy of certain testimony as to the relative merits of the Bell and Bedford telephone systems. The testimony was wholly irrelevant to any issue raised by the pleadings, but as we fail to see wherein any harm could have resulted to defendant, there is no ground for reversal upon this exception.

Appellant's main reliance is upon the exception which assigns error in refusing defendant's request to charge the jury that there is no evidence of wilful wrong and that they could not find a verdict for punitive damages. It is now well settled that it is error of law to refuse to so charge, when requested, if there is no evidence of wilfulness. *Machen* v. *Telegraph Co.,* 72 S. C., 257; *Murray* v. *Tel. Co.,* 74 S. C., 68. The testimony for plaintiff merely showed a failure to deliver the message, and failure to notify plaintiff of non-delivery. It appears that there were two ways of transmitting a message from Whitmire to Lockhart Mills—one by way of Charlotte to Sharon, and thence by Bedford telephone to Lockhart Mills, the other by way of Spartanburg or Atlanta to Lockhart Junction, and thence by Bell Telephone to Lockhart Mills. The message received by plaintiff from his father went by way of Lockhart Junction. The defendant promptly transmitted

the message in question to Sharon, and made several efforts
to telephone through, but failed to do so, because the tele-
phone line was down, probably because of the sleet the night
before.   The Sharon agent then sent service message to the
sending office, notifying of inability to deliver over telephone,
and sent message by next mail to Lockhart Mills.   The
defendant could not have notified the plaintiff at Whitmire
of the non-delivery of the message, as plaintiff had left
Whitmire for Union before the return service message was
received, and there was no allegation or evidence that defend-
ant contracted to transmit such notice to plaintiff at Union.
It may be suggested that there was some evidence of wilful
wrong in not trying to deliver by way of Lockhart Junction,
since a message had that morning successfully come to plain-
tiff that way, to the knowledge of defendant; but, on the
other hand, there was undisputed evidence that it was usual
to deliver messages to Lockhart Mills by way of Sharon
over the Bedford telephone, which is ordinarily a good line,
and there was no allegation or evidence that defendant con-
tracted to deliver the message over the Bell telephone from
Lockhart Junction.   After careful consideration, we find
that there was no evidence whatever that defendant wantonly
or wilfully disregarded its duty to plaintiff.   The fourth
exception is, therefore, sustained.

The fifth exception charges error in refusing to grant the
motion for a new trial based upon three grounds: (1) there
was no allegation and no evidence that defendant had notice
of any special damages that would result from failure to
deliver said telegram; (2) there was no evidence of
any damages sustained as the direct and proximate
result of defendant's failure to deliver said telegram;
(3) there was no evidence to support the verdict.   The fol-
lowing testimony of plaintiff appears at folio 46 of the
"Case:"

"Q. Tell us just what you did tell the agent, give us your
words?   A. I told him I wanted to send a message to J. J.
Jones at Lockhart, and he said all right, what for; and I
told him I received one a few minutes ago from my father

that my wife's brother was dead and I wanted to go, but couldn't get to Lockhart without hiring another turnout at Union, and I said he has got a turnout at Lockhart, and it won't cost him anything, and I wanted him to meet me there, and he said all right, .25, and I gave him a quarter and walked out."

It is apparent from the above that there was evidence that defendant had notice that the purpose of the message was (1) to enable plaintiff to reach Lockhart Mills that evening because of the death, and of the funeral next day, of his wife's brother; and (2) to avoid the expense of hiring a conveyance at Union. Since plaintiff reached Lockhart Mills in time for the burial, there was and could be no claim for mental anguish damages on that account; and there is no allegation in the complaint of any mental suffering resulting from the four hours delay in being with his dead brother, hence we may eliminate from the case mental anguish as a proper element of damages. The plaintiff's remaining in a disagreeable livery stable for four hours on a cold day, was not such a result as could have been within the contemplation of the parties, or such as should have been reasonably anticipated by the defendant from a failure to deliver the telegram, but was the result of plaintiff's choice to remain there instead of seeking a more comfortable place or pursuing his journey in a hired conveyance. Likewise his exposure to the cold and his suffering therefrom, beyond what he would have endured in any event even had his father met him as expected, was the result of his failure to hire the conveyance, ready at hand at any moment, and setting out on his journey with reasonable promptness, after knowledge that his father's conveyance had not arrived. The plaintiff had the means to procure another conveyance, as shown by the fact that he did finally hire one, and he was aware of the inclemency of the weather and the near approach of night, and the considerations that made him wish to reach Lockhart Mills as soon as possible. The law requires one who is affected by the negligence of another to use ordinary care to

avert or minimize the harmful consequences. 27 Ency. Law, 1033; *Willis* v. *Tel. Co.*, 69 S. C., 539, 48 S. E., 538.

So that, conceding that the jury found the defendant negligent in failing to deliver the message, there was no foundation in the evidence for holding defendant liable for a sum greater than the cost of the telegram and the expense incurred by plaintiff in hiring a conveyance as the natural and proximate result of the failure to deliver the telegram, and within the contemplation of the parties.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

Mr. Justice Gary *concurs in the result.*